RONALD K. HOELZ, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hoelz v. Commissioner
Docket No. 9439-78.
United States Tax Court
T.C. Memo 1981-496; 1981 Tax Ct. Memo LEXIS 248; 42 T.C.M. (CCH) 1037; T.C.M. (RIA) 81496; September 10, 1981. Ronald K. Hoelz, pro se. Frank D. Armstrong, Jr., for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies and additions to tax in petitioner's income tax for the years 1973, 1975 and 1976 as follows: Additions to Tax
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)
Sec. 6654 [1]
1973
$ 2,236.10
$ 559.03
$ 111.81
$ 71.38
1975
4,279.12
1,069.78
213.96
184.86
1976
1,966.00
491.50
98.30
73.21
The issues for decision are: (1) whether petitioner may refuse to file returns for the years *250 1973, 1975 and 1976 based upon Fourth and Fifth Amendment claims or because he believes the United States dollar is not constitutional money; and (2) whether petitioner has adequately substantiated any exclusions or deductions from gross income in excess of the amounts determined in the statutory notice. [2]
FINDINGS OF FACT Some of the facts in this case have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by reference. At the time the petition in this case was filed, petitioner resided in Wilson, North Carolina. During the year 1973, petitioner was employed as a minister of the gospel by the Tabernacle Baptist Church, located in Wilson, North Carolina. In 1974, petitioner left the *251 Tabernacle Baptist Church and subsequently became the pastor of the newly formed Temple Baptist Church in Wilson. Petitioner received a salary from Tabernacle Baptist Church in 1973 and from Temple Baptist Church in 1975 and 1976. During the year 1973, petitioner received $ 300 from Tabernacle Baptist Church as reimbursement for expenses he incurred in connection with church business. During the years in issue, petitioner drove the automobiles he owned for business purposes 2,000 miles each year. On September 9, 1976, petitioner delivered to the Internal Revenue office in Goldsboro, North Carolina, a Form 1040 which purported to be a joint federal income tax return for Ronald K. and Jeanne S. Hoelz for the years 1973 and 1975. This form contained the following statement: On the basis of my 4th and 5th Amendment Constitutional rights, I will refrain from answering the questions in this document on the grounds of self-incrimination. On or about April 12, 1977, petitioner delivered to an employee of the Internal Revenue Service additional Forms 1040 which purported to be the joint federal income tax return of Ronald K. and Jeanne S. Hoelz for the taxable years 1973 and 1975. *252 On various lines throughout each of these forms are contained the words "Object - Self Incrimination." On or about April 15, 1977, petitioner delivered to an employee of the Internal Revenue Service a Form 1040 which purported to be a joint federal income tax return of the petitioners for the year 1976. This form also contained the words "Object, Self-Incrimination" on several of its lines. Petitioner refused to cooperate with the examining revenue agent in the subsequent audit of his case; he refused to make any of his tax records available and he declined to discuss his federal income tax liability for the taxable years 1973, 1975 and 1976 with any employee of the Internal Revenue Service. As a result of petitioner's failure to cooperate, an employee of the Internal Revenue Service issued a summons to a bank official of Branch Bank and Trust Company in Wilson, North Carolina, to require production of petitioner's bank records for these years. On May 25, 1977, the petitioner gave written notice to the bank, a third-party recordkeeper under section 7609, not to comply with the summons. The respondent subsequently instituted a proceeding in the United States District Court *253 to judicially enforce the summons issued to the bank. On August 25, 1977, Judge F.T. Dupree, Jr., United States District Judge, Eastern District of North Carolina, entered an Order requiring the bank to produce the records designated in the summons issued to the bank. In the statutory notice of deficiency, respondent determined that petitioner had unreported gross income for the taxable years in issue in the following amounts: 1973
1975
1976
Tabernacle Baptist Church
$ 13,379.00
0
0
Temple Baptist Church
0
$ 16,087.84
$ 13,240.99
Income from the sale of Books
[sic] (The Burning Hell)
0
3,527.62
0
Interest Income - Branch
Bank & Trust Co.
15.07
27.68
4.48
Total Receipts
$ 13,394.07
$ 19,643.14
$ 13,245.47
OPINION The first issue for decision relates to various constitutional and legal tender arguments which petitioner makes in support of his position that he should not be required to file federal income tax returns and report any income received during the taxable years at issue. Petitioner argues that the Fourth and Fifth Amendments to the Constitution protect him from having to file income tax returns to report his income; *254 petitioner also argues that federal reserve notes do not constitute legal tender under the Constitution. These contentions are without merit. It is well settled that the guarantees of the Fifth Amendment do not encompass the right to refuse to file an income tax return. United States v. Sullivan, 274 U.S. 259 (1927); United States v. Porth, 426 F.2d 519 (10th Cir. 1970), cert. denied 400 U.S. 824 (1970). Similarly, petitioner's Fourth Amendment claim as well as his legal tender argument offer him no support. Cupp v. Commissioner, 65 T.C. 68 (1975). Consequently we reject petitioner's various constitutional contentions. The next issue for decision is whether respondent erred in determining petitioner's gross income for the years in issue in the respective amounts of $ 13,394.07, $ 19,643.14 and $ 13,245.47. Since petitioner refused to cooperate in the audit of his case, respondent was forced to compute petitioner's income by reference to the church and bank records which were eventually made available to the revenue agent who handled this case. In arriving at petitioner's taxable income, respondent utilized the *255 standard deduction and computed his tax liability by referring to the tax tables for a married individual filing separately. In the petition filed with this Court, petitioner alleged (in addition to his various constitutional objections) that respondent erred in determining allowable business expenses, the appropriate number of dependency exemptions and in computing petitioner's income tax liability on the basis of a married individual filing separately. At trial, petitioner presented no evidence concerning his entitlement to additional dependency exemptions or his entitlement to joint rates. As a consequence our analysis will be confined to whether petitioner has demonstrated that respondent's determination of gross income should be reduced (either by way of deductions for business expenses or by way of any exclusions from income). Petitioner bears the burden of demonstrating error in the respondent's deficiency determination. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142. [3] It is thus incumbent upon petitioner to establish any deductions, offsets or exclusions from gross income. The record reflects that petitioner received $ 13,379 from Tabernacle Baptist *256 Church in 1973 and $ 16,087.84 and approximately $ 3,313 from Temple Baptist Church for the years 1975 and 1976, respectively. Since the available records from Temple Baptist Church covered only three months of 1976, respondent annualized the payments for that year by multiplying the $ 3,313 figure by four. The deficiency determination also included minimal amounts of interest income for each taxable year and $ 3,527.62 in income for 1975 from a film called The Burning Hell. Since no records were made available to respondent to demonstrate any deductions from gross income, the statutory notice allowed petitioner the standard deduction. At trial, petitioner raised four objections to respondent's determination. We will address each of these in turn. Petitioner's first assignment of error concerns the $ 3,527.62 which respondent determined to be includable in petitioner's income for 1975 as "Income from Sale of Books [sic] (The Burning Hell)." This figure was derived from the funds which petitioner deposited in a bank account at First-Citizens *257 Bank and Trust Company, an account which petitioner maintained in connection with the showing of The Burning Hell. Petitioner had signature authority over this account and its listed address was the same as petitioner's. The revenue agent included these deposits in petitioner's income since he was unable to ascertain the disposition of the funds going into this account or whether petitioner incurred any deductible expenses in connection with the film's showing. Petitioner maintains that this account was an official account of the Temple Baptist Church and that its deposits were used to cover the expenses petitioner incurred in connection with the film's showing. In support of this contention, petitioner introduced a document, signed by four individuals who listed themselves as official board members of Temple Baptist Church during 1980, which stated that the account was an official account of the church. None of these alleged officials testified at the trial of this case. The contention that this account was that of the church's does not comport with the fact that petitioner retained signatory authority over the account and that its address was the same as his home address. *258 Petitioner has not established to our satisfaction that the funds were held in trust for the church. Since petitioner had complete control over the account, the amounts deposited during 1975 constitute income to him except to the extent that he can establish that any monies were used to pay expenses deductible either under section 162 or section 212. Petitioner did not produce any evidence to show how the deposited funds were used; he also failed to demonstrate that the deposits to the account were intended to represent reimbursement for expenditures he incurred. Indeed, petitioner admitted at trial that he didn't know the amount of these expenses and he did not even offer an estimate. Accordingly, respondent's determination as to this issue is sustained. Petitioner next contends that the payments made to him in 1973 from Tabernacle Baptist Church totaling $ 944.66 do not constitute income, but were intended to reimburse him for expenses he paid on behalf of the church. To buttress this contention, petitioner introduced a copy of a handwritten list which he stated was derived from an examination he made of the church's check stubs. The check stubs were not placed in evidence. *259 This list purports to indicate that the reimbursements were for office expenses, church equipment, mailing costs and expenditures for petitioner's radio ministry and mission work. Many of the checks which petitioner listed were issued to him in round numbers such as $ 10, $ 20 and $ 25. Although the evidence presented concerning this point is meager, at the trial we had the opportunity to observe the demeanor of petitioner as a witness. We are persuaded that some portion of the $ 944.66 figure was paid to reimburse petitioner for expenses he incurred in connection with performing his duties as a minister. Bearing heavily against the petitioner, whose inexactitude is of his own making, Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we thus determine that this reimbursement figure is $ 300. As a consequence, petitioner is entitled to exclude this amount from his income. See generally section 1.162-17, Income Tax Regs.
Petitioner next argues (an argument which was raised for the first time at trial) that part of the payments made by the Temple Baptist Church in 1975 and 1976 constituted an excludable housing allowance within the purview of section 107. *260 At trial, petitioner submitted a statement signed by the Above-mentioned four individuals who listed themselves as board members of the Temple Baptist Church during 1980. This statement reads in part as follows: It is our policy that the Pastor should declare as non-taxable income the amount which he must extract from his weekly check to be spent for utilities, housing and car allowance. Aside from respondent's objections concerning the hearsay nature of the document as well as the timeliness of the raising of this issue, it is evident that this statement would not suffice to satisfy the regulations under section 107, even if it had been issued in 1973, 1975 or 1976, the years at issue, rather than four years later. The statement from the church's board members, dated November 18, 1980, clearly does not specifically provide for a rental allowance officially designated by the church in advance of payment within the meaning of section 1.107-1(b). [4] There is no indication that any portion of petitioner's salary was designated as a rental allowance. See Boyer v. Commissioner, 69 T.C. 521 (1977); Eden v. Commissioner, 41 T.C. 605 (1964). There *261 also has been no specific showing that any portion of petitioner's salary was in fact used in the years at issue to rent or otherwise provide a home. Section 1.107-1(c), Income Tax Regs.; Rule 142. We therefore reject petitioner's contention that he is entitled to exclude a portion of his salary under section 107. *262 Petitioner's final argument concerns whether he is entitled to a section 162 deduction for automobile transportation costs during the years at issue. To substantiate these expenditures, petitioner produced copies of pages from two spiral notebooks which he stated reflected the daily odometer reading on automobiles he drove. According to petitioner, the original notebooks were lost when his church's school was broken into and ransacked. Petitioner testified that his travel stemmed both from his duties as a pastor, such as paying visits to his parishioners, and also from non-pastoral duties -- e.g., as a state official for the Christian education movement. Respondent disputes petitioner's entitlement to a business expense for these transportation costs by noting that the notebook copies do not distinguish between business and personal mileage; reflect the destination of or the business reason for travel; or reflect whether the travel was local or incurred while petitioner was away from home overnight. Respondent also questions the probative value of the notebook copies and asserts that a valid inference can be drawn that the notebooks were constructed for purposes of trial and *263 then photocopied in order to conceal any indication that the same pen had been used in writing down the entries or that the notebook was in new condition (and thus not a contemporaneous recordation of the odometer reading). It is true that petitioner's proffered documentary evidence leaves much to be desired in terms of substantiating petitioner's deductions. Nonetheless, petitioner testified at trial and we found him credible with respect to this aspect of his case. We believe that he is entitled to deductions for transportation expenditures to the extent that the expenditures do not represent travel away from home. See section 1.274-4, Income Tax Regs. Under Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we determine that petitioner used his cars for business purposes 2,000 miles for each year in issue, and petitioner is accordingly entitled to a section 162 deduction for 1973, 1975 and 1976 in the respective amounts of $ 240, $ 300 and $ 300. [5]
Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise specifically indicated.↩
2. The petition in this case did not assign any error to respondent's assertion of the additions to tax under sections 6651(a)(1), 6653(a) and 6654. Petitioner presented no evidence at trial and his brief similarly contains no arguments addressing the propriety of imposing these additions. We will consider any allegations of error as to the imposition of these additions to have been subsumed under petitioner's various constitutional arguments.↩
3. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.↩
4. Section 1.107-1(b), Income Tax Regs., provides as follows: (b) For purposes of section 107, the term "home" means a dwelling place (including furnishings) and the appurtenances thereto, such as a garage. The term "rental allowance" means an amount paid to a minister to rent or otherwise provide a home if such amount is designated as rental allowance pursuant to official action taken prior to January 1, 1958, by the employing church or other qualified organization, or if such amount is designated as rental allowance pursuant to official action taken in advance of such payment by the employing church or other qualified organization when paid after December 31, 1957. The designation of an amount as rental allowance may be evidenced in an employment contract, in minutes of or in a resolution by a church or other qualified organization or in its budget, or in any other appropriate instrument evidencing such official action. The designation referred to in this paragraph is a sufficient designation if it permits a payment or a part thereof to be identified as a payment of rental allowance as distinguished from salary or other remuneration.↩
5. See Rev. Proc. 70-25, 1970-2 C.B. 509 for 1973, and Rev. Proc. 74-23, 1974-2 C.B. 476↩ for the years 1975 and 1976.